[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO SUSPEND VISITATION ORDER #138, DEFENDANT'S MOTION FOR CONTEMPT #140 DEFENDANT'S MOTION FOR CONTEMPT #141
Many of the facts that give rise to the above motions are not in dispute. The parties were married on September 19, 1981. There are two minor children: Mary Catherine Harrington born April 19, 1989 and Kenneth Charles Harrington born April 8, 1990. The marriage between the parties was dissolved on June 5, 1996. An agreement entered into between the parties dated June 5, 1996 was approved of and incorporated by reference. Prior to the dissolution of their marriage the defendant was a winner in the lottery. The separation agreement provided in part that the defendant was to pay during his life time in cash, to the plaintiff during her lifetime, periodic alimony in the sum of $25,000 per year until the year 2006. Said alimony is to be paid each November in the amount of $16,875.00 and the second installment to be paid in May in the amount of $8,125.00 The parties also agreed to share joint legal custody of the minor children with reasonable visitation to the defendant and physical custody and final decision making in the plaintiff The primary residence of the children was to be with the plaintiff. The reasonable rights of visitation for the defendant was to include but not be limited to:
 a. Alternating weekends beginning on Friday at 6:00 p. m. and ending Sunday at 7:00 p. m.;
b. Each Tuesday from 4:00 p. m. to 7:00 p. m.;
 c. Alternating weeks (weeks where the defendant will not have the children for the weekend) Friday from 4:00 p. m. to 7:30 p. m. or overnight;
 g. The defendant was to also have visitation with the children from the last two weeks of July through the first two weeks of August.
CT Page 14682
The agreement also provided that the parties shall exert every reasonable effort to maintain free access and unhampered contact between the children and the parents. Neither party was do anything which may estrange the child from the other party, or act in such a way as to hamper the free and natural development of the child's love and respect for each parent.
On May 7th, 1997, pursuant to a motion coded #126, filed by the plaintiff, the matter of visitation of the minor children was referred to the Family Relations Division for mediation. The mediation was completed on June 5, 1997 and resulted in an agreement between the parties. The Agreement coded #128 provided as follows:
1. Visitation will rotate in the following way:
 A. Weekend number one — The father will pick up both children at 4:00 p. m. and have them until Saturday at 9:00 a.m. when the mother will pick them up at the father's home.
 B. Weekend number two — The father will pick up both children on Friday at 4:00 p. m. and the mother will pick them up on Sunday at the father's home at 6:45 p. m.
 C. Weekend number three — Both children will stay with the mother for the entire weekend.
 D. Weekend number four — the father will pick up both children at 4:00 p. m. on Friday and the mother will pick them up on Sunday at 6:45 p. m.
 E. The father will have visitation every Tuesday when he will pick up both children at 4:00 p. m. and the mother will pick them up at 7:30 p. m.
 F. After weekend number four is complete the cycle will begin again with weekend number one — perpetually.
 G. On the week preceding weekend number three father will be entitled to a midweek visit when he will pick up both children at 4:00 p. m. and the mother will pick them up at 6:45 p. m. This midweek visit will be planned through mutual agreement no later than two weeks ahead of time.
2. Both parents will keep each other informed of all medical, CT Page 14683 school, psychological and emotional progress with each child.
3. For 1997 only, father will pick up the children on Thursday July 3, 1997 at 9:00 a.m. and mother will pick the children up at 9:00 a.m. on Saturday July 5, 1997.
4. All other visitation will be made through mutual agreement of both parties.
5. unless otherwise noted above the current holiday and vacation schedules will remain in effect.
On July 3, 1997 an order was entered enjoining the plaintiff from removing the minor children from the State of Connecticut until further order of the court. On July 8, 1997 an agreement was entered into by the parties coded #130 that was approved by the court and provided as follows:
1. Parties agree that the defendant will pick up the children on Friday, July 11th at 9:00 a.m. signifying the commencement of Mr. Harrington's summer visitation. Visitation is to end on Sunday, August 3rd at the Sturbridge Publick House at 6:00 p. m. Mother to enjoy visitation with the children commencing July 25, at 7:00 p. m. until Sunday July 27th at 6:00 p. m. Mother to pick up and drop off the children at the Huntington Woods Clubhouse.
2. Commencing August 3rd the children will be returned to the primary physical custody of the mother who is temporarily relocating to Massachusetts.
3. This matter shall be returned to Family Relations for a custody/visitation study.
4. The parties agree, until further court order, to the following visitation schedule:
 a. The children will enjoy visitation with their father on every other weekend commencing August 15, 1997, Fridays at 7:00 p. m. until Sunday at 6:00 p. m. parties to meet at Sturbridge Publick House to transfer the children.
b. Father to have visitation with the children on Labor Day weekend ending Sept. 1st, Monday 6:00 p. m. and Columbus Day weekend ending on Monday at 6:00 p. m. CT Page 14684
5. The temporary injunction entered by the court on July 3rd
1997 is vacated by agreement.
Family Relations completed its report on December 15, 1997 and filed it on January 8, 1998. The Family Relations report that was completed on December 15, 1997 recommended that the parties share joint legal custody with final decision making with the mother. It also recommended that the father have visitation on alternate weekends as well as other extensive visitation. An order was entered on February 10, 1998 coded 132 that the case be referred back to Family Relations to review additional doctors reports to ascertain whether there should be any further recommendations.
Family Relations filed its report on April 13, 1998. On May 20, 1998 the parties entered into the following agreement that was approved of by the court on May 20, 1998:
1. Visitation shall be modified as follows:
 a. Alternate weekends, from 5:00 p. m. Friday to 7:30 p. m. Sunday with plaintiff bringing children to defendant on said Fridays and defendant dropping off children to plaintiff on said Sundays;
 b. Summer visitation of two weeks to defendant commencing the first full week the children are out of school, and two weeks to defendant at the beginning of August (being the first two full weeks);
 c. Winter vacation with the plaintiff and spring vacation to the defendant; if there shall be an additional week, this extra vacation shall be alternated.
 d. Easter, Memorial Day, 4th of July, Labor Day and Thanksgiving shall be alternated. defendant shall have Memorial Day in 1998, and the schedule shall alternate from that point.
e. For 1998, defendant shall have the children from 4:30 p. m. on Christmas Eve to 10:00 a.m. on Christmas morning. For 1999 plaintiff shall have children Christmas Eve through 10:00 a.m. Christmas Day. The defendant shall have children from 10:00 a.m. until 9:30 p. m. on Christmas Day. This shall be CT Page 14685 alternated thereafter.
f. All other visitation shall be by mutual agreement.
2. The defendant shall have phone contact with the children 3 times per week as arranged by parties, and the plaintiff shall have the same phone contact during the weekly blocks of visitation of the children with the defendant.
3. The support shall be by immediate wage execution, of $240 per week.
4. Uncovered and unreimbursed medical, dental, etc. costs for the minor children shall be shared 50%/50% by the parties as of 1/1/98.
5. Neither parent shall utilize corporal punishment as a means of discipline for the children.
The plaintiff filed a motion to suspend visitation order dated June 18, 1998 file stamped June 19, 1998 coded 138 that alleges as follows:
The plaintiff, in the above referenced action, respectfully represents as follows:
1. She was contacted by the Department of Children and Families because the children's pediatrician made a report to Department of Children and Families.
2. The basis of the report was a report by the child that the father had squeezed the child's arm, leaving a bruise which would not dissipate.
3. The plaintiff spoke to the Department of Children and Families case is still pending and that it will not be closed for at least thirty days if it is closed at all.
4. Under the circumstances the plaintiff feels that it is not in the children's best interest to continue visitation with their father, because of the pending Department of Children and Families allegations against him.
WHEREFORE, the plaintiff respectfully requests that the visitation be suspended until further order of the Court, and CT Page 14686 pending the resolution of the Department of Children and Families case.
The defendant filed a Motion for Contempt of Visitation Orders dated July 16, 1998, file stamped July 20, 1998 coded 140. That motion alleged that the plaintiff mother has intentionally, maliciously and without good cause denied the father any physical contact or visitation with the children since June 6, 1998. The defendant filed another motion for contempt of joint legal custody order dated July 16, 1998 file stamped July 20, 1998 alleging that the plaintiff had denied the defendant access to and visitation with the children and had denied him any physical contact with the children since June 6, 1998 so that the children have not only missed their regular visitation with the defendant but their summer vacation as well.
The parties entered into an agreement dated July 20, 1998 that was approved of by the court on July 20, 1998, coded #139. That agreement provides as follows
The parties hereby agree as follows:
1. Plaintiff's motion to suspend visitation (#138) and defendant's two Motions for Contempt (not numbered yet) shall be heard together at a future date to be assigned by the Court. Parties referred to caseflow for date (Stevens, J)
2. Counsel for the parties shall find a mutually agreeable date sufficiently prior to said hearing date for counsel for the defendant to take plaintiff's deposition.
3. To meet with Dr. Kenneth Wenning of Hamden for a family counseling session as soon as possible.
4. Until further order of this court or written agreement by the parties; Defendant shall have access to the parties two children, Mary (4/19/89) and Kenneth (8/08/90), every Saturday beginning July 25, 1998, from 11:00 a.m. through 7:00 p. m., such access occurring in the presence of Ms. J. Ahern of 6 Boylston Street, Newington. Plaintiff shall drop off and pick up children to and from Ms. Ahern's residence, unless otherwise agreed to by the parties. Mrs. Ahern's telephone number will be provided to plaintiff today.
5. These orders shall enter without prejudice. CT Page 14687
The defendant entered into the agreement of July 20, 1998 regarding supervised visitation in order to obtain some visitation with the children prior to the time the motion's filed by the parties could be heard.
On one occasion following the defendant's supervised visitation under the agreement coded #139 the children did not want to leave him to return to the plaintiff. Since July 20, 1998 the children have told the plaintiff that they missed seeing the defendant on a regular basis and enjoyed their overnight visitation with him and would like to have it resumed.
The plaintiff claims that on June 11, 1998 the minor child Mary told her that her arm hurt her and that the defendant had squeezed it. Mary was seen by Jillian Draper (a physician's assistant) on June 12, 1998. The plaintiff claims that the child's arm was swelling above the left elbow about the size of an egg and had bruises and redness. When Mary was examined by Jillian Draper on June 12, 1998 she had a faint bruise on her left inner arm approximately the size of 4 inches by one inch with very mild discoloration. The area was not tender to palpation. The child told Jillian Draper that defendant had grabbed her arm and squeezed it. The child told Jillian Draper that the defendant "squeezed so tight that I bruised". Jillian Draper then referred the matter to DCF. A DCF worker came to the plaintiffs residence on June 12, 1998 following notification by Jillian Draper. The DCF worker is trained to recognize child abuse and neglect. When contacted by Jillian Draper the defendant stated that he had not hit the child. Jillian Draper was under the opinion that the use of language by child that "I bruised" was not language of a child but rather was adult language. The bruise on the arm of the child could have occurred other than by squeezing. There were no finger prints seen in the area of the bruise. The child initially told the plaintiff that the bruise occurred when she was playing soccer. She later said that she was hit or punched by the defendant. She later stated that the defendant had squeezed her harm. The plaintiff did not inform Jillian Draper of those statements by the child. The plaintiff claims that when she discussed the matter with Mary on June 11, 1998 that after touching Mary's harm gently, Mary flinched. The court finds that claim is not credible. After the DCF worker left the plaintiff's residence at approximately 5:30 p. m. on Friday, June 12, 1998 the plaintiff called the defendant and told him that he would not be allowed his visitation that weekend because CT Page 14688 DCF was doing an investigation regarding the bruise to Mary's harm. The defendant informed her that he had not hit Mary. Mary was in school between June 1, 1998 and June 11, 1998 and participated in school activities. There were no calls from any school personnel regarding the bruise to Mary's harm. The court finds that the defendant did not cause the bruise to Mary's harm and did not squeeze her harm. The court finds that there was no reasonable basis for the plaintiff to believe that the bruise on Mary's harm was as result of any activity by the defendant.
By letter dated June 19, 1998 counsel for the plaintiff wrote to counsel for the defendant as follows:
Dear Attorney Switko:
 The children's pediatrician called DCF because of a report by the child that Mr. Harrington squeezed her harm, leaving a sizeable bruise which did not dissipate.
 Ms. Pastore spoke with DCF this morning concerning the upcoming 2 week visit which Mr. Harrington was to commence shortly. DCF informed her that her case was pending and would not be closed for at least 30 days-if it is closed at all.
 Under the circumstances, I have advised Ms. Pastore that she is not to permit visitation with Mr. Harrington unless and until the DCF report exonerates him. She simply cannot take the chance that DCF finds, her to be negligent in permitting the children to visit with their father under the circumstances.
 I realize that this will be very disappointing to Mr. Harrington, especially over Father's Day. I'm sorry about that, but simply cannot advise her to allow visitation with DCF's file pending.
 Please let your client know about this situation as soon as possible so there is no misunderstanding.
 Very truly yours, Diana L. Mercer cc: Helen Pastore
After investigating the matter DCF closed the file with the only recommendation that the defendant seek parenting classes. CT Page 14689 The decision by DCF to close its file regarding the alleged June 11, 1998 incident occurred prior to the time this court commenced hearing the evidence on the plaintiff's motion to suspend visitation coded #138 and the defendant's two motions for contempt coded #140 and #141. The plaintiff's motion to suspend visitation dated June 18 1998 and coded #138 was based solely on the fact that the DCF investigation was pending and the plaintiff in her claim for relief requests that the visitation be suspended until further order of, the court, and pending the resolution of the Department of Children and Families case. A pending investigation by DCF is not in an of itself sufficient grounds to violate a court order regarding visitation. Faced with the fact that the Department of Children and Families have closed their investigation the plaintiff sought to justify her continuing request that the defendant's visitation be supervised and that she was not in contempt of court by raising claims of prior conduct of the defendant. Those claims were as follows:
The plaintiff claims that when she and the defendant were both being treated at Atlantic Health that the defendant admitted having spanked Kenneth on his bare bottom in 1995. The plaintiff was being treated at Atlantic Health for stress regarding her protracted divorce from the defendant as well as for feeling tired and anxious. She is not under treatment at the present time. The defendant was being treated for depression and anxiety. The plaintiff also claims that the minor child Kenneth also informed her of the bare bottom spanking by the defendant. During the plaintiff's deposition on August 13, 1998 she testified that the children did not report to her any spankings. The court finds that her claim that the defendant and the child Kenneth told her of a spanking by the defendant is not credible.
The defendant arrived at the plaintiff's residence on May 9, 1997 to exercise his visitation. The visitation order in place on that day was for the defendant to have visitation on Friday from 4:00 p. m. to 7:30 p. m. or overnight. It was the usual practice of the plaintiff and the defendant as of May 7 1997 for the defendant to keep the children overnight on Friday evenings. The defendant became upset when the plaintiff was not willing to allow him to have overnight visitation with the minor child Kenneth. The defendant grabbed the, minor child Kenneth by his arm. The minor child Kenneth was climbing and engaged in other activities immediately following this incident. The following day he was playing baseball and did not complain of any problems with his arm or shoulder. On Wednesday the was at baseball practice CT Page 14690 and was not having any problem with his arm or shoulder. The child Kenneth later told the defendant that the defendant had hurt his arm. When the defendant inquired when it had occurred the told the defendant that the plaintiff had told him that the defendant had hurt his arm in the May 9, 1997 incident. The court finds that the May 9, 1997 incident did not cause any injury to Kenneth and does not form any reasonable basis to require that the defendant's visitation with the children be supervised.
The plaintiff brought the minor child Mary to the office of Dr. Wenning on February 1998 where Mary complained that the defendant had hit her repeatedly on various parts of her body. When Dr. Wenning spoke to Mary on February 5, 1998 she stated that the defendant had hit her on her back, stomach, arms, legs and head in recent months since December 1997. After Mary was seen by Dr. Wenning on February 5, 1998 the contacted DCF in the plaintiff's presence. He related to DCF that Mary had stated to him that she had been hit, by, the defendant on various parts of her body. He was told by DCF that the did not have to file a report. If Dr. Wenning had felt that the defendant had hit the child the would of filed a report and would of told that to Family Relations and would have told Family relations to contact DCF. Mary loves the defendant and wants to spend more time seeing him. Dr. Wenning was seeing Mary in part as a result of the child feeling sad. The plaintiff informed Family Relations that Mary had related to the plaintiff that the defendant had struck Mary many times on many parts of her body. Mary claimed that the plaintiff had hit her and that her Stepfather and brother had hit her. During the period between January 1998 and May 1998 there were no marks or bruises seen on Mary by Dr. Wenning. Dr. Wenning had not told Family Relations or DCF that the had concerns regarding Mary spending time with the defendant. He would have told DCF and Family Relations if the believed that there was risk to Mary from visiting with the defendant. The never told the plaintiff that the defendant should not see the children. As of July 19, 1998 the did not have any concerns regarding the defendant having visitation with the children. The defendant denied having struck Mary on various parts of the body to Dr. Wenning. The court finds that the defendant did not strike the minor child Mary on various parts of her body. The court finds that there was no reasonable basis for the plaintiff to believe that the defendant had in fact hit Mary on various parts of Mary's body.
There was one incident in approximately March of 1998 when CT Page 14691 the minor child Mary as with the defendant and was trying to tie her sneaker. The defendant grabbed her by the leg and pulled her to him to tie her sneaker. There was no mark left on the child's body a result of that incident. The defendant did not strike Mary as part of that incident.
The defendant was not allowed to exercise his weekend visitation with the children on the weekend of June 12, 1998 and did not have any visitation from June 12, 1998 until July 20 1998. The plaintiff did not bring the children to the defendant's residence in accordance with the May 20 1998 court order from June 12, 1998 through July 20, 1998.
The court finds that neither the alleged 1995 bare bottom spanking, nor the Friday May 9, 1997 visitation incident, nor the claims made to Dr. Wenning on February 5, 1998, nor the shoe tying incident of March 1998 nor the claim of the bruise to Mary's arm on June 11, 1998 formed a reasonable basis individually or collectively for the plaintiff to deny the defendant his visitation. From all the evidence presented this court finds that the plaintiff is willful violation of the court order dated May 20 1998 in that she has refused to allow the defendant his alternating weekend visitation commencing June 12, 1998 and has not allowed the defendant his two week summer visitation and did not bring the children to the defendant's residence in accordance with the May 20, 199 order.
The parties are in dispute on the issue of attorneys fees concerning contempt. The defendant seeks attorney's fees in the amount of $19,003.00. The plaintiff seeks attorneys fees in the amount of $15,315 00. The court enters the following orders:
1. The court grants the defendant's motion for contempt coded #140 and the defendant's motion for contempt coded #141.
2. The court allows attorneys fees to counsel for the defendant in the amount of 15,315.00. These attorneys fees are to paid in full from the lottery payment of the plaintiff being held in escrow by counsel for the defendant. The payment is to be made on December 29, 1998.
3. The plaintiff's motion to suspend visitation coded #138 is denied.
4. The agreement entered into between the parties dated July CT Page 14692 20, 1998 coded 139 is vacated.
5. The visitation order entered on May 20, 1998 is reinstated.
6. The defendant is granted the following additional visitation:
 a. The full period of time that the children are on vacation from school in December 1998 until school resumes in January 1999.
 b. Three additional weeks of summer vacation in the summer of 1999.
 c. one additional weekend per month for the months of January 1999 through May, 1999.
7. The defendant's lottery payment being held in escrow by counsel for the defendant is ordered released as of December 29, 1998.
Sidney Axelrod Judge of the Superior Court